UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONZALOS GLASCO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cv-1570-TWP-TAB |
| ) | |
| CAPTAIN MCKINNEY, DOCTOR NELSON, ) | |
| DOCTOR WOLFE, NURSE DILLOW, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on Defendant's Amber Dillow, LPN ("Nurse Dillow"), Christopher Nelson, M.D. ("Dr. Nelson"), and William Wolfe, M.D. ("Dr. Wolfe") (collectively, "the medical defendants")[1], motion for summary judgment. Plaintiff Conzalos Glasco ("Mr. Glasco"), a state prisoner, filed the present action against the medical defendants alleging a violation of his Eighth Amendment rights. Specifically, Mr. Glasco alleges the medical defendants were deliberately indifferent to his injured hand. For the reasons explained below, the unopposed Motion for Summary Judgment (Dkt. 23) is **GRANTED** and the medical defendants are entitled to judgment as a matter of law.

**I. BACKGROUND**

On September 10, 2011, Mr. Glasco's right hand was injured after he was "jumped" by other prisoners. At approximately 11:51 p.m. on September 10, 2011, Nurse Dillow, a Licensed Practical Nurse at the New Castle Correctional Facility ("New Castle"), saw Mr. Glasco for an intake screening. Nurse Dillow made a courtesy look at his injured right hand even after Mr.

---

[1] Defendant Captain McKinney was previously granted summary judgment on his affirmative defense that Mr. Glasco failed to exhaust his administrative remedies prior to filing this lawsuit.

Glasco told her that he thought it was broken. Nurse Dillow has no independent recollection of seeing Mr. Glasco for an injury to his hand but her intake screening log indicates "inmate offers no complaints." Had he complained, Nurse Dillow's practice and routine would have been to evaluate his hand and determine whether it required immediate medical attention.

On September 12, 2011, Nurse Jamie Thomas saw Mr. Glasco for a swollen right hand. Nurse Thomas prescribed Mr. Glasco pain medication, instructed him to apply ice/cold compresses and elevate his hand, and to return to sick call if his symptoms did not subside or became more severe. Nurse Thomas also notified Dr. Nelson of Mr. Glasco's swollen hand and Dr. Nelson ordered a right hand x-ray. Dr. Nelson does not have control over when an x-ray takes place, and he does not consider a potentially fractured finger as an emergent situation that requires an immediate x-ray or transfer to an outside hospital. On September 14, 2011, Mr. Glasco's right hand was x-rayed. The x-rays confirmed a right third metacarpal fracture, and Mr. Glasco was placed in a short arm cast that day.

Mr. Glasco was placed on Dr. Nelson's list of patients to see on September 20, 2011. Dr. Nelson's physical examination revealed that Mr. Glasco's hand was neurovascularly intact, that he had experienced no sensory loss, and that his fingers were able to extend and spread against resistance. Despite the stable condition of his hand, Dr. Nelson ordered an orthopedic consultation for Mr. Glasco. On September 22, 2011 Mr. Glasco received prescribed Ibuprofen for his pain.

On October 12, 2011, a follow-up x-ray was obtained that revealed Mr. Glasco's fracture line was still visible, which would not be uncommon after experiencing a fracture approximately 30 days prior. X-ray results also confirmed no significant callus formation and no problems with

2

position or alignment. Due to Mr. Glasco's still visible fracture line, it was appropriate to keep his cast in place while the fracture continued to heal.

On November 4, 2011, Dr. Nelson saw Mr. Glasco to follow up on his fracture. Mr. Glasco had no complaints of pain and his hand was again neurovascular intact. Dr. Nelson ordered another x-ray of his hand to monitor the progression of his fracture. X-ray results confirmed that Mr. Glasco's fracture was in good position and alignment and without significant callous formation.

On November 21, 2011, Dr. Nelson again saw Mr. Glasco to follow up on his fracture. Dr. Nelson's physical examination revealed good mobility of Mr. Glasco's fingers and that they were neurovascularly intact. Dr. Nelson also ordered an additional x-ray to determine the degree of healing to the fracture.

On November 30, 2011, Dr. Nelson again saw Mr. Glasco. Despite his fracture line appearing non-displaced, Dr. Nelson decided to submit another orthopedic consultation request as the fracture was not healing at the expected rate.

On December 8, 2011, Mr. Glasco presented to Wishard Hospital for an orthopedic consultation. Following Mr. Glasco's return from Wishard Hospital orthopedics, Dr. Nelson followed Wishard Hospital's physicians' recommendations and requested aggressive range of motion physical therapy for Mr. Glasco's hand. However, before physical therapy could begin at New Castle, Mr. Glasco was transferred to the Pendleton Correctional Facility ("Pendleton") and out of Dr. Nelson's care in late December of 2011. Neither Dr. Nelson nor any of the medical staff at New Castle had any involvement in the decision to transfer Mr. Glasco.

On January 6, 2012, Dr. Wolfe, a physician at Pendleton, first saw Mr. Glasco who presented with deformity to his left thumb joint from osteoarthritis and degeneration. These

issues were not a result of his fracture on his right hand. For his fracture, Dr. Wolfe ordered physical therapy because it appeared that it had previously been ordered but had not been started due to Mr. Glasco's transfer between facilities. Dr. Wolfe also ordered medication for pain management and follow-up x-rays of both hands. X-rays revealed good alignment of the fracture.

On March 26, 2012, Dr. Wolfe saw Mr. Glasco for follow-up. Dr. Wolfe ordered x-rays which revealed good alignment of the fracture, although without complete bony bridging. This meant that Mr. Glasco's fracture was continuing to properly heal, albeit slowly. On April 10, 2012, Dr. Wolfe saw Mr. Glasco once again. Based on his examination of Mr. Glasco's hand, Dr. Wolfe did not feel that additional physical therapy would be beneficial as Mr. Glasco displayed nearly full range of motion of his hand, only slightly reduced (yet functional) grip strength, and mild reduction in finger flexion. On May 3, 2012, Dr. Wolfe requested a follow-up x-ray to evaluate Mr. Glasco's fracture. Results confirmed a healing fracture that was non-displaced with good alignment.

On August 9, 2012, Dr. Wolfe saw Mr. Glasco for follow-up and ordered an x-ray. The x-ray results confirmed a healed fracture. Dr. Wolfe met with Mr. Glasco again on August 23, 2012, to discuss the results of the x-ray. Despite Mr. Glasco's contention that he could not make a fist, the range of motion in his hand, wrist and fingers was nearly normal, and his grip strength was equal bilaterally. Mr. Glasco's hand displayed no swelling. Dr. Wolfe determined that the fracture was healed and that no additional follow-up or orthopedic consultation was medically indicated.

## II. LEGAL STANDARD

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (*quoting* Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the non-moving party bears the responsibility of identifying the evidence upon which he relies. *See Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

A party opposing a summary judgment motion must, within 28 days after the movant serves the motion, file and serve a response brief and any evidence (that is not already in the record) that the party relies on to oppose the motion. *See* Local Rule 56-1(b). On May 5, 2013 medical defendants filed their motion for summary judgment and Mr. Glasco did not respond. By not responding to the motion for summary judgment, Mr. Glasco has conceded to the medical defendants' version of the facts. *Brasic v. Heinemann=s Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56-1, of which Mr. Glasco was notified. This does not alter the standard for assessing a Rule 56 motion, but does Areduc[e] the pool@ from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

### III. DISCUSSION

Mr. Glasco's claim is brought pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any ['1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Mr. Glasco alleges that the medical defendants violated the Eighth Amendment's proscription against cruel and unusual punishment by acting with deliberate indifference to his serious medical needs.

To survive summary judgment, Mr. Glasco must satisfy two elements, one objective and one subjective. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). To satisfy the objective element in the medical care context, Mr. Glasco must "present evidence supporting the conclusion that he had an objectively serious medical need." *Id.* (internal quotation omitted). "'A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir.2012) (*quoting Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)).

As for the subjective element, Mr. Glasco must show that the medical defendants were aware of his serious medical need and were deliberately indifferent to it. *McGee*, 721 F.3d at 480. To demonstrate that a defendant acted with a "sufficiently culpable state of mind," a plaintiff must put forth evidence to establish that the defendant knew of a serious risk to the prisoner's health and consciously disregarded that risk. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). This subjective standard requires more than negligence and it approaches intentional wrongdoing. *See Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th

Cir. 2012). For a medical professional to be held liable under the deliberate indifference standard, he must make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (*quoting Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)).

The medical defendants do not dispute that Mr. Glasco's fractured hand qualifies as a serious medical need for the purposes of their motion for summary judgment. Instead, they argue that there is no evidence to support a claim that any of the medical defendants were deliberately indifferent to Mr. Glasco's medical needs because they provided timely and appropriate medical care.

A.   **Nurse Dillow**

Mr. Glasco has not filed any response in opposition, therefore the undisputed evidence indicates that at the time Nurse Dillow saw Mr. Glasco at 11:51 p.m. on September 10, 2011 for an intake screening, she was not aware of an injury to his hand. Because Nurse Dillow had no subjective knowledge of Mr. Glasco's hand fracture she could not have been deliberately indifferent to any medical need associated with this injury. Even assuming Mr. Glasco had complained of a hand injury, there is no evidence before the Court that Nurse Dillow's alleged "courtesy look" as his hand and failure to discover the injury was intentional and not merely negligence. In addition, Nurse Dillow was not involved in the x-ray process and did not delay Mr. Glasco's access to an x-ray. Based on these circumstances, Nurse Dillow is entitled to judgment as a matter of law on the claims alleged against her.

**B.    Dr. Nelson**

The undisputed evidence establishes that Dr. Nelson consciously monitored Mr. Glasco's fracture through multiple x-rays and physical examinations. When Dr. Nelson determined that Mr. Glasco's fracture was not healing at the expected rate, he sent Mr. Glasco for an orthopedic consultation at Wishard Hospital.  Upon Mr. Glasco's return to prison and pursuant to Wishard Hospital's physicians' recommendations, Dr. Nelson ordered physical therapy for Mr. Glasco's hand.  Before physical therapy could begin at New Castle, however, Mr. Glasco was transferred to another facility.  There is no evidence upon which a reasonable jury could conclude that Dr. Nelson was deliberately indifferent to Mr. Glasco's medical needs.  Dr. Nelson is entitled to summary judgment in his favor.

**C.    Dr. Wolfe**

The undisputed evidence established that Dr. Wolfe ensured that Mr. Glasco received physical therapy for his hand, continued to monitor Mr. Glasco's hand through x-rays and physical examinations, provided pain medication in response to Mr. Glasco's complaints, and made a medical decision that Mr. Glasco did not require an additional appointment with Wishard Hospital once Mr. Glasco's fracture healed and there was no ratable impairment to his right hand.  There is no evidence upon which a jury could conclude that Dr. Wolfe was deliberately indifferent to Mr. Glasco's medical needs.  Summary judgment is granted in favor of Dr. Wolfe.

### IV.  CONCLUSION

For the reasons stated above, the medical defendants' Motion for Summary Judgment (Dkt. 23) is **GRANTED.**

This Entry along with the Entry of April 18, 2013, resolves all claims against all parties. All defendants are entitled to judgment as a matter of law. Judgment consistent with these Entries shall now issue.

**SO ORDERED.**

Date: 10/08/2013 

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Conzalos Glasco, DOC #890756
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, Indiana 46064

Adam G. Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com

Jeb A. Crandall
Rachel A. East
BLEEKE DILLON CRANDALL, P.C.
jeb@bleekedilloncrandall.com
rachel@bleededilloncrandall.com